**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Eyeblaster, Inc,

                Plaintiff,  **MEMORANDUM OPINION**
                              **AND ORDER**
vs.  Civil No. 07-4379 ADM/JJK

Federal Insurance Company,

                Defendant.

_____

Robert P. Thavis, Esq., Leonard, Street and Deinard, Minneapolis, MN, appeared for and on behalf of the Plaintiff.

Dale M. Wagner, Esq. and Jessica S. Williams, Esq., Bassford Remele, Minneapolis, MN, appeared for and on behalf of the Defendant.

_____

## I.  INTRODUCTION

On August 25, 2008, the undersigned United States District Court Judge heard oral argument on the Motion for Partial Summary Judgment of Plaintiff Eyeblaster, Inc. ("Eyeblaster") and the Cross Motion for Summary Judgment of Defendant Federal Insurance Company ("Federal").  [Docket Nos. 19 & 25].  Eyeblaster seeks a declaration that Federal was obligated to defend Eyeblaster in a lawsuit brought by Plaintiff David Sefton in the United States District Court for the Southern District of Texas (the "Sefton Action").  Federal requests summary judgment on all claims asserted by Eyeblaster.  For the reasons set forth below, this Court denies Eyeblaster's Motion for Partial Summary Judgment and grants Federal's Motion for Summary Judgment.

## II. BACKGROUND

### A. The Parties and the Insurance Policies

Eyeblaster is a worldwide company in the business of interactive advertising content delivery and management technology, and whose primary product assists in the creation, delivery, and management of online advertising. Arnstein Aff. [Docket No. 22] ¶ 2. Eyeblaster is a Delaware corporation with its principal place of business in New York. Notice of Removal [Docket No. 1] ¶ 4. Federal, an insurance company, is an Indiana corporation with its principal place of business in New Jersey. Id. ¶ 3. Eyeblaster alleges that Federal owed it a duty to defend and a duty to indemnify from the Sefton Action, which alleged damages in excess of $75,000 exclusive of fees and costs. Id. ¶ 5.

Eyeblaster purchased general liability ("GL") and information and network technology errors and omissions ("E&O") insurance policies from Federal for the period of December 5, 2006, to December 5, 2007. Arnstein Aff. ¶ 3. Generally, the GL policy insured Eyeblaster for claims alleging damage to tangible property. Thavis Aff. [Docket No. 23] Ex. A, at 20, 49. The E&O policy covered Eyeblaster against claims of financial loss caused by a wrongful act that resulted in damage to intangible property including data, software, and other information in electronic form. Id. at 53, 75-76. Subject to the terms of the policies, Federal had a duty to defend Eyeblaster against suit even if the suit was false, fraudulent, or groundless. Id. at 21, 54.

### B. The Sefton Complaint

On November 16, 2006, David Sefton filed his First Amended Complaint against Eyeblaster in federal court in Houston, Texas. Arnstein Aff. Ex. 1. Eyeblaster tendered that complaint to Federal on or about January 2, 2007. Id. at ¶ 6 and Ex. 3 (Federal Letter to

Eyeblaster Denying Coverage). On March 12, 2007, Federal informed Eyeblaster by letter that it denied all coverage with respect to Sefton's First Amended Complaint under both the GL and E&O policies. Id. at Ex. 3. It reasoned that under the GL coverage Sefton did not allege property damage due to an accident or occurrence, and under the E&O policy Sefton's allegations did not include a wrongful act covered under that policy. Id. The letter also identified exclusions under both policies as further reasons for the denial and reserved the right to cite additional policy provisions as appropriate. Id. Sefton filed a Second Amended Complaint on July 24, 2007. Id. Ex. 2. The Second Amended Complaint included the allegations in the First Amended Complaint as well as additional allegations.

In the Second Amended Complaint, Sefton alleged that Eyeblaster, on or about July 21, 2006, enticed him to visit a website by fraudulently misrepresenting the website had a connection to America Online, Inc., and that by visiting the website Eyeblaster was able to download its spyware onto his computer. Id. Ex. 2 ¶¶ 6-9, 62. Sefton alleged Eyeblaster installed tracking cookies, executable code, java script, and GIFs on his computer. Id. ¶¶ 14-20. He also alleged that this act changed his security settings, installed pop-up advertising on his computer, renamed files, and redirected his computer and web-browsing. Id. ¶¶ 30-37. He alleged the introduction of this spyware caused his computer to freeze up resulting in lost data for a tax return on which he was working, and that he paid a computer technician to unsuccessfully repair the damage caused by the spyware. Id. ¶ 71. Sefton alleged he experienced sustained and significant internet transmission before he activated any internet software, that his computer was "taken over," and that he could not operate his computer until this transmission was finished. Id. ¶ 101.

He further alleged the software allowed commercial surveillance that could result in cyber-stalking, identification of confidential web visitations, breach confidential identity information, and invasion of privacy and solitude. Id. ¶ 104. The spyware consumed massive amounts of memory and caused Sefton's computer to stop running or run so slowly it was essentially inoperable. Id. ¶ 112. Finally, he experienced numerous pop-ups, a hijacked browser, unanticipated toolbars, unanticipated icons, random, haphazard error messages, and slowed computer performance that occasionally resulted in crashes. Id. ¶ 113.

Sefton alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Texas Business and Commercial Code §§ 48.052 & 48.101, a deceptive trade practice under Texas law, prima facie tort under Texas law, trespass, conversion, fraud, nuisance, invasion of privacy, intrusion upon seclusion, and conspiracy. Id. ¶¶ 123-75. For the purposes of this litigation, the Court notes Sefton alleged that Eyeblaster "intentionally accessed a protected computer without authorization," that the deceptive trade practice violations "were committed knowingly," that Eyeblaster intended to deceive Sefton, intended that he would rely on its misrepresentations, and that "the unwanted installation of spyware onto the user's computer can certainly be said to be an intentional act by the distributor of the spyware to use or intermeddle [sic] with the consumer's computer and processing power." Id. ¶¶ 127, 139, 141, 157. After receiving the Second Amended Complaint, Eyeblaster tendered it to Federal. Arnstein Aff. ¶ 7. In a letter dated September 18, 2007, Federal reaffirmed its position that no coverage existed under the policies, and it therefore had no duty to defend or indemnify. Arnstein Aff. Ex. 4.

Eyeblaster filed this action against Federal in the district court for Hennepin County, State of Minnesota on October 1, 2007. Complaint [Docket No. 1]. Federal removed to this

Court on October 25, 2007, pursuant to 28 U.S.C. § 1441.  Notice of Removal.

### III.  DISCUSSION

**A.    Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.    Duty to Defend**

The insurer has a duty to defend all claims against the insured if any one of the asserted causes of action is arguably within the scope of policy coverage.  Metro. Prop. & Cas. Ins. Co. & Affiliates v. Miller, 589 N.W.2d 297, 299 (Minn. 1999).  The duty to defend is broader than the duty to indemnify.  Id.  To avoid this obligation, the insurer must establish that all claims clearly fall outside the policy.  Id.  The duty to defend is determined by comparing the allegations in the complaint against the insured to the language in the insurance contract and assessing if the claims "state a cause of action within the coverage afforded by the policy."  Meadowbrook, Inc.

v. Tower Ins. Co., 559 N.W.2d 411, 419 (Minn. 1997); Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254, 256 (Minn. 1993).

Eyeblaster asserts the Sefton Complaint arguably contains allegations giving rise to coverage under both the GL and E&O policies. It also maintains that none of the policy exclusions apply. Federal argues that the Sefton Action is not covered under either the GL or E&O policies, but even if it were, various policy exclusions apply that would deny coverage under both policies.

### 1. The GL Policy

The coverage clause of the GL policy states:

> Subject to all of the terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay by reason of liability;
> • imposed by law; . . .
> for bodily injury or property damage caused by an occurrence to which this coverage applies. . . .

Thavis Aff. Ex. A at 20. Property damage is defined as:

> • physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> • loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that cause it.
> Tangible property does not include any software, data, or other information that is in electronic form.

Id. at 49. Finally, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 47. Eyeblaster argues the GL policy should cover the Sefton Action because Sefton alleged damage to tangible property. Specifically, Eyeblaster cites the allegations in the Second Amended Complaint which state Sefton's "computer immediately froze up," stopped running or ran so slowly as to be essentially

6

inoperable, and that his computer was "taken over and [could not] operate until this sustained and significant and unauthorized transmission takes place." Arnstein Aff. Ex. 2 ¶¶ 71, 101, 112. Coverage under the GL policy turns on whether these allegations in the Sefton Complaint allege damage to tangible property which give rise to a duty to defend, or whether instead the allegations claim damage to software, which is specifically excluded from coverage.

While this issue has not been raised in Minnesota courts, the Fourth Circuit answered a substantially similar question in America Online, Inc. v. St. Paul Mercury Ins. Co., 347 F.3d 89 (4th Cir. 2003). In that case, America Online, Inc. ("AOL") brought an action against its insurer, St. Paul Mercury ("St. Paul"), to require St. Paul under its GL policy to defend against claims that AOL's software package caused damage to computers, computer data, and software systems. St. Paul denied coverage claiming the GL policy only covered loss to tangible property, and the allegations in the complaint asserted damage only to intangible property: software.

The Fourth Circuit characterized the allegations in that case, which are similar to those in the Sefton Action, as altering "the plaintiffs' existing software, disrupt[ing] their network connections, caus[ing] the loss of stored data, and caus[ing] their operating systems to crash." Id. at 91-92. The outcome turned on whether the plaintiffs alleged damage to tangible property. The Fourth Circuit began its analysis by defining tangible as "capable of being touched." Id. at 94. It proceeded to find that the AOL software may have created a conflict with the programming of data on the computer's hard drive, but not the hard drive itself. Id. at 95. The result of this reordering of data was to cause problems with the computer, but "regardless of whether the software is rendered unusable, the hardware remains available for instructions and

recording." Id. at 96.  The Fourth Circuit analogized to the situation of a combination to a combination lock being forgotten; the lock becomes useless, but the lock is not physically damaged.  Id.  As a result, the Fourth Circuit ruled that the complaint did not allege physical damage to tangible property and therefore St. Paul had no duty to defend in that action.  Id. at 97.

The allegations in the Sefton Complaint, like those in AOL, all relate to damage to software.  The policy language clearly states "tangible property does not include software."  Thavis Aff. Ex. A at 44.  While Sefton may allege that his computer froze or processed so slowly as to be essentially inoperable, these allegations all relate to the effect Eyeblaster's spyware had on his computer's software.  He did not allege any actual damage to his hard drive.  While the Complaint referenced damages to the less exact term "computer," which necessarily contains both software and hardware components, the allegations in the Complaint demonstrate the damage was solely the effect of Eyeblaster's product on the software on Sefton's computer, not the hardware.  Because only the software was damaged, there was no damage to tangible property and the allegations in the Complaint are not covered under the GL policy.

### 2. The E&O Policy

The operative language for the E&O policy states:

> Subject to all of the terms and conditions of this insurance, we will pay loss by reason of liability:
> • imposed by law; . . .
> for financial injury, caused by a wrongful act:
> • That results in the failure of your product to perform the function or to serve the purpose intended; . . .
> to which this coverage applies.

Thavis Aff. Ex. A at 53.  "Financial injury" is defined as:

>Economic injury sustained by a person or organization because their property, including software, data and other information that is in electronic form:
>- cannot be used; or
>- is less useful.

Id. at 73. Finally, a "wrongful act":

>- means an error, unintentional omission or negligent act.
>- includes all related wrongful acts and all series of continuous, repeated or related wrongful acts.

Id. at 75. Unlike the GL policy, the E&O policy specifically covers intangible property such as software, data, and other electronic information. Additionally, Federal does not contest that the Sefton Complaint alleges a financial injury that would be covered under the E&O policy. Memo. in Supp. of Def.'s Mot. for Summ. J. [Docket No.27] at 24, n.5. Federal does contest, however, whether Eyeblaster committed a "wrongful act" within the meaning of the policy. The thrust of Federal's argument is that because Sefton's Complaint alleged that Eyeblaster intended to place its software on his computer, there was no wrongful act for purposes of coverage. Eyeblaster counters arguing that the Complaint alleges negligence in addition to intentional conduct on Eyeblaster's part, and that Federal's definition of wrongful act is too broad and would render the coverage illusory.

Courts must look at the allegations in the complaint to determine whether the claims state a cause of action within the meaning of the policy. See Meadowbrook, 559 N.W.2d at 419. In looking at the entirety of the Sefton Complaint, it is apparent that he alleged Eyeblaster acted intentionally in placing its software on his computer. While there are fleeting references to misrepresentation, trespass, and invasion of privacy in the nearly one hundred and ninety paragraph Complaint, the substance of the allegations is clearly that Eyeblaster intentionally placed its product on Sefton's computer. See Franklin v. Western Nat. Mut. Ins. Co., 574

N.W.2d 405, 407 (Minn. 1998) (construing the pleadings as a whole to determine basis of party's claim and finding no duty to defend under the policy).  Having established that Sefton alleged intentional conduct, the next determination is whether that conduct is covered under the E&O policy.

The policy defines a "wrongful act" as "an error, unintentional omission or negligent act."  Thavis Aff. Ex. A at 75.  Eyeblaster argues that nothing in this definition supports a reading that these errors, omissions or negligent acts apply to inadvertent or unintended acts.  As such, Eyeblaster is entitled to coverage even for an intended act that results in an unintended injury.  This interpretation runs counter to the plain language of the definition.  The policy language focuses on the "act," and the Court must determine whether the Sefton Complaint alleges that Eyeblaster's intentional act of placing its spyware on Sefton's computer is covered under that policy definition.  It is not.  Eyeblaster designed its software to install itself on Sefton's computer, and that act caused the damage addressed in the Complaint.  Had Eyeblaster intended to give its customers one type or software but instead mistakenly provided them with a different version that caused a problem, this error would be covered under the language of the E&O policy.  According to the language of the Complaint, however, Eyeblaster specifically intended that this software would install itself on Sefton's computer and regardless of whether Eyeblaster intended the resulting injury, this act is not covered under the E&O policy language.

Finally, Eyeblaster argues that this interpretation of the policy language renders the coverage illusory because the nature of its business requires it to place cookies, Flash technology, and JavaScript on users' computers and by intending those acts, this interpretation would deny it coverage.  As discussed above, the E&O policy still applies to Eyeblaster in some

situations such as the installation of incorrect software, even if it does not cover this situation. The E&O policy covers a bundle of risks and while this act by Eyeblaster may possibly be uninsurable, the policy is not illusory because there is no coverage.  For these reasons, Federal did not owe Eyeblaster a duty to defend in the Sefton action[1].

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 25] is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment [Docket No. 19] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 7, 2008.

---

[1] Because the Court has found Federal owed Eyeblaster no duty to defend under either the GL or E&O policies, it is unnecessary to reach the issues involving the various policy exclusions.